UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID J. KESTER,

                Plaintiff,

                                                 **REPORT AND RECOMMENDATION**

v.                                                     15-CV-00945(RJA)(JJM)

NANCY A. BERRYHILL, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.[1]
_____

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Supplemental Security Income ("SSI") or Disability Insurance Benefits ("DIB"). Before me are the parties' cross-motions for judgment on the pleadings [9, 16 ],[2] which have been referred to me for the preparation of a Report and Recommendation [10]. Having reviewed the parties' submissions [9, 16, 19], I recommend that this case be remanded to the Acting Commissioner for further proceedings.

---

[1]     Since Nancy A. Berryhill is now the Acting Commissioner of Social Security, she is substituted for Carolyn W. Colvin as the defendant in this action pursuant to Fed. R. Civ. P. ("Rule") 25(d). *See* Quintana v. Berryhill, 2017 WL 491657, *7 n. 1 (W.D.N.Y. 2017).

[2]     Bracketed references are to the CM/ECF docket entries.

**BACKGROUND**

On or about June 20, 2012, plaintiff filed applications for SSI and DIB, alleging a disability onset date of August 1, 1999. Administrative record [6], pp. 104-14. His alleged disabilities included shattered vertebrae, irritable bowel syndrome, and hearing loss. Id., p. 132. Plaintiff's applications were denied (id., pp. 58-69), and an administrative hearing was held on December 18, 2013 before Administrative Law Judge Timothy McGuan. Id., pp. 34-47. Both plaintiff, who was 43 years old at the time, and a vocational expert testified. Id. Plaintiff was represented at the hearing by counsel, and amended his onset date to September 30, 2005, the date he last worked and also the date he was last insured for purposes of his DIB claim. Id., pp. 19, 33, 38. ALJ McGuan determined that plaintiff was not disabled (id., pp. 19-28), and the Appeals Council denied plaintiff's request for review. Id., pp. 1-3. Thereafter, plaintiff commenced this action.

At the administrative hearing and in his medical records, plaintiff linked his back condition to what he described as a shattered vertebra that he sustained diving into a pool in 1999. Id., pp. 37-38, 41, 194. Plaintiff testified that since he ceased working in September 2005, he had been able to "do practically nothing". Id., p. 38. He is able to sit and stand for 45 minutes before having to change positions, walk 100 yards, and lift and carry five pounds. Id., pp. 38-39.

On March 29, 2001, plaintiff was seen by William J. Wnuk, M.D., his family practitioner, who assessed him with a good range of motion and found him to have a negative straight leg raise test. Id., p. 283. He was continued on Motrin for his lumbosacral pain. Id. An April 3, 2001 x-ray revealed L5 spondylolysis. Id.[3] On April 3, 2002, plaintiff was seen by Dr.

---

[3] "Spondylolysis is a defect sometimes resulting from a healed fracture to a part of a vertebra, usually the L5 vertebra, called the pars interarticularis, which can result in pain of varying intensity." Castano v. Astrue, 650 F. Supp. 2d 270, 272 (E.D.N.Y. 2009).

Wnuk for complaints of lumbosacral back pain. Id., p. 279. At that point, he remained on "light duty", which restricted him to lifting 20 lbs occasionally and standing and walking no more than 6 hours per day. Id. It was also noted that he had difficulty sitting for prolonged periods of time. Id. A straight leg test was negative. Id. He was directed to follow up with John Leddy, M.D., of University Sports Medicine, as previously instructed. Id.

After a course of chiropractic care was unsuccessful, on April 23, 2003 plaintiff saw Dr. Leddy, who found that he had full range of motion in his lumbar spine and that his straight leg raise test was negative. Id., pp. 188-89. Plaintiff reported that his pain was triggered by bending forward or prolonged sitting. Id., p. 188. An MRI performed several weeks later revealed degenerative disc disease at L5-S1, but without any evidence of "active spondylolysis or disc herniation". Id., p. 192. Dr. Leddy prescribed physical therapy for plaintiff. Id.

After physical therapy failed to provide plaintiff much benefit, P. Jeffrey Lewis, M.D. performed a neurolosurgical consultation on May 6, 2005. Id., pp. 193-94. At that time, plaintiff reported that he was unable to sit or stand for more than 45 minutes. Id., p. 193. Dr. Lewis found that plaintiff had a "moderately severe restricted range of motion of the lumbar spine on flexion and extension". Id., p. 194. Following an MRI, plaintiff was seen again by Dr. Lewis on June 24, 2005, who concluded that the MRI revealed a "4 mm broad based central subligamentous disc herniation at L5-S1 indenting the anterior aspect of the thecal sac", with about an "50% collapse of the disc space". Id., p. 195. Because conservative treatment had failed, Dr. Lewis recommended an anterior lumbar fusion, concluding that plaintiff "is very disabled from the pain as it has been quite severe". Id.

Plaintiff next sought treatment for his back in February 2009 when he reported to Dr. Wnuk that he experienced "some back pain at times and takes ibuprofen". Id., p. 272. Dr.

Wnuk found "[s]ome lower lumbosacral spinal tenderness on palpation", but had full range of motion bilaterally. Id. On April 28, 2009, he informed Dan Dudziak, a Physicians Assistant, that he medicinally uses marijuana "with good effect on a daily basis", but recently had a felony arrest for marijuana production. Id., p. 269. It was noted that plaintiff previously declined Dr. Lewis' surgery recommendation because of the potential for an adverse outcome, and that with his marijuana use made "it difficult to . . . to give him additional medications to control his pain". Id. An examination revealed that plaintiff was "in some distress" and that his lumbar spine was "completely straightened from spasm with tenderness over the lower L3-4 region and into bilateral SI joints". Id. Plaintiff was continued on Flexeril and prescribed Indocin, an anti-inflammatory. Id. At a May 26, 2009 follow-up visit plaintiff continued to decline surgery and preferred to try medication to manage his pain, if possible. Id., p. 267. It was noted that he was in no apparent distress. Id. He was prescribed Codeine for "breakthrough pain" and Cymbalta, and directed to work on exercises at home. Id.

On September 11, 2009, plaintiff reported that he no longer had relief from his back pain since discontinuing his marijuana use and was in substance abuse counseling. Id., p. 265. At that time, he reported pain ranging from 4/10 to 10/10 depending upon his activities, and was occasionally experiencing radiculopathy to the legs. Id. Plaintiff had no lumbar extension, but had 90 degrees of flexion.[4] He was diagnosed with lumbago and referred for pain management with Buffalo Spine and Sports. Id. At his November 4, 2009 annual physical examination, Dr. Wnuk continued to instruct plaintiff to perform regular exercise and to follow-up with a pain specialist. Id., p. 264. A straight leg test was negative. Id.

---

[4] "Normal ranges of motion for the lumbar spine are as follows: 60 degrees of flexion, 25 degrees of extension, 25 degrees of left and right lateral flexion, and 30 degrees of left and right rotation." Carlantone v. Colvin, 2015 WL 9462956, *4 n. 9 (S.D.N.Y. 2015).

Plaintiff was next seen for back pain on June 4, 2010. At that time, he reported that he could not do physical therapy and would not be returning to Buffalo Spine and Sports. Id., p. 259. He also reported that he had been "cutting trees for work", and was taking his mother's Percocet, which worked much better than the Lortab he was prescribed. Id. He had 60 degrees of flexion and no extension in his lumbar spine. Id. He returned again on August 25, 2010, complaining of a four-day flare up. Id., p. 258. He was in "some distress moving around on the table, getting from sitting to standing on the table with some difficulty, and walking around with a very antalgic gait". Id. At that time, he was "not really using much of anything" for his back pain. Id. Dr. Wnuk described plaintiff as "one of these types that ignores his problem until it gets unbearable and then seeks help . . . . I don't know if there is much else we can do conservatively, although, I do have a tendency to believe . . . that he might not be the most compliant person when it comes to things like following therapists advice . . . . He is going to have to start thinking about something more definitive for his back I think". Id.

At plaintiff's November 9, 2010 annual physical exam Dr. Wnuk found "minimal spinal tenderness of the lower lumbar region". Id., p. 256. Although Dr. Wnuk continued plaintiff on his medications, he determined that "further pain medications will need to be done through . . . [the] pain management specialist. The patient needs to call." Id. He also gave him a referral to Chris Hamill, M.D. to determine whether surgery was warranted. Id.

On May 31, 2011, plaintiff was seen by Dr. Hamill. At that time, plaintiff was in constant pain, but did notice "minimal improvement with pain medications". Id., p. 197. He informed Dr. Hamill that he had "seen multiple surgeons and they would all like to perform a fusion procedure". Id. Dr. Hamill found that plaintiff had "[l]imited lumbar. . . range of motion secondary to his pain", "significant pain with palpation over the lumbar spine and paraspinals

bilaterally", and "[s]traight leg raise is 90 [degrees] and negative bilaterally". Id., p. 198. From his review of the May 31, 2011 x-rays, Dr. Hamill determined that there was "degenerative disc disease most noted at L5-S1 which is mild. The remaining disc space heights appear to be well maintained." Id. Plaintiff was referred for physical therapy. Id.

At the August 31, 2011 follow-up with Dr. Hamill, plaintiff's straight leg test was negative and he was in no apparent distress. Id., p. 200. A MRI performed that day revealed a "broad-based central, slightly left paracentral disc herniation". Id. At that time, Dr. Hamill advised him of the risks of proceeding with a L5-S1 discectomy for him to assess in determining whether he wished to proceed with surgery. Id., pp. 201-02.

Plaintiff returned to Dr. Wnuk on September 29, 2011, reporting that he had completed four weeks of physical therapy without improvement. Id., p. 249. Plaintiff also reported that Dr. Hamill had not recommended surgery, prompting Dr. Wnuk to refer him to Dr. Egnatchik for a second opinion. Id., pp. 249-50.[5] He also reported that he was unable to find a pain management specialist who took his insurance. Id., p. 249. At that time, plaintiff appeared to be in no acute distress. Id. While he had no extension of his lumbar spine, he had 60 degrees of flexion and had a normal gait. Id.

On July 3, 2012, Dr. Wnuk competed a Medical Source Statement assessing plaintiff as being unable to perform sedentary work since July 1999. Id., pp. 203-05. Specifically, he found plaintiff limited since July 1999 to lifting up to five pounds occasionally, sitting up to four hours, standing up to three hours, and walking up to two hours in an eight work day. Id., p. 206. He also found that plaintiff could never stoop or push or pull. Id. Dr. Wnuk

---

[5] Although not reflected in Dr. Hamill's treatment notes, plaintiff testified that Dr. Hamill could nothing for him because his disc was "too severely smashed". Administrative record [6], p. 40.

stated that plaintiff "remains unable to work at this time" and "has also seen numerous specialists who concur as well". Id., p. 205.,

On September 7, 2012, Hongbiao Liu, M.D. conducted a consultative internal medical examination of plaintiff. Id., p. 214. Dr. Liu found plaintiff to be in no acute distress and to have a normal gait and stance. Id., p. 215. Although plaintiff was unable to perform squats because of low back pain, he used no assistance devices, required no help getting on and off the exam table, and was able to rise from a chair without difficulty. Id. Plaintiff's lumbar spine showed "flexion and extension [of] 70 degrees,[6] lateral flexion . . . [of] 15 degrees, and rotation . . . [of] 15 degrees". Id., p. 216. A straight leg test was "positive at 10 degrees bilaterally" and was confirmed in both the supine and seated positions. Id. Dr. Liu concluded that plaintiff had a "moderate limitation of prolonged standing, bending, and kneeling". Id., p. 217.

On March 28, 2013, plaintiff was seen by Joanne Pantano, a Nurse Practitioner with Buffalo Neurosurgery Group, for a neurosurgical consultation. At that time, he had a "very restricted range of motion". Id., p. 299. Nurse Pantano reported that plaintiff "had been seen by Dr. Leddy, Dr. Lewis, and Dr. Hamill; all of whom have suggested different surgical procedures", but since several years had passed, he wanted "to revisit the idea of surgery". Id. A May 3, 2013 MRI revealed a "broad central disc herniation indenting the anterior aspect of the thecal sac" at L5-S1, but with no evidence of central spinal stenosis. Id., p. 300.

---

[6] Both parties acknowledge this to be an error. Plaintiff's Memorandum of Law [9-1], p. 15 n. 3; Acting Commissioner's Brief [16-1], p. 10 n. 5. Since the normal lumbar extension (backward bending) is 25 degrees, it would be expected that plaintiff's extension would be approximately 25 degrees or less. While plaintiff contends that it is reasonable to assume that his lumbar extension was 10 degrees, that remains supposition. Plaintiff's Memorandum of Law [9-1], p. 15 n. 3.

Based upon the medical evidence and testimony, ALJ McGuan determined that plaintiff's severe impairments included a "broad based herniation at L5-S1- lumbago".[7] Id., p. 21. ALJ McGuan concluded that plaintiff had the residual functional capacity ("RFC") to perform sedentary work with a noise restriction. Id., p. 22. In reaching that RFC, ALJ McGuan gave "some weight" to both Dr. Wnuk's functional assessment and Dr. Liu's consultative examination. Id., p. 27. He then went on to explain that he determined that plaintiff had the RFC to perform sedentary work based on "the herniated disc and complaints of pain, but also because the objective examination findings do now show straight leg raise problems and only bending problems". Id. However, he found "no limitation with regard to sitting". Id. Based upon that RFC, ALJ McGuan determined that plaintiff was unable to perform his past relevant work as a floor installer, but that there were other jobs that he was able to perform, and therefore had not been disabled since September 30, 2005, through the date of the decision. Id., p. 28.

## ANALYSIS

**A.  Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

---

[7]  "Lumbago is low back pain." Riley v. Astrue, 2008 WL 2696259, *7 n. 8 (S.D.N.Y. 2008).

For purposes of entitlement to disability insurance benefits, a person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§423(d)(1)(A) & 1382c(a)(3)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy". 42 U.S.C. §§423(d)(2)(A) & 1382c(a)(3)(B).

In order to determine whether plaintiff is suffering from a disability, the following five-step inquiry must be employed:

> "1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform."

Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. *See* Talavera v. Astrue, 697 F.3d 145 (2d Cir. 2012); 20 C.F.R. §§404.1520, 416.920. Moreover, the ALJ has an affirmative duty to fully develop the record where deficiencies exist. *See* Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972); Swiantek v. Acting Commissioner of Social Security, 588 Fed. Appx. 82, 84 (2d Cir. 2015) (Summary Order).

B. **Plaintiff's Arguments**

1. **Did ALJ McGuan Properly Evaluate Dr. Wnuk's Opinion?**

Plaintiff first argues that ALJ McGuan "erred by rejecting Dr. Wnuk's opinion, as a treating physician", which was "binding in the absence of another medical source opinion" that specially addressed the period prior to September 30, 2005, the date last insured, through September 7, 2012, the date of Dr. Liu's examination. Plaintiff's Memorandum of Law [9-1], pp. 17-20; plaintiff's Reply [19], p. 4. While Dr. Liu's consultative opinion does not expressly render an opinion about plaintiff's limitations prior to September 30, 2005, "it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. . . . It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984) ("medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status"); Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987) ("medical evaluations made subsequent to the expiration of a claimant's insured status are not

automatically barred from consideration and may be relevant to prove a previous disability"). Although "'[t]here are circumstances where such evidence is irrelevant or entitled to little weight as a factual matter, such as where the later medical condition is attributable to some incident that occurred after the period in question, or where there is a substantial lapse of time and a lack of evidence connecting the prior condition to the more recent medical evidence'" Hall v. Astrue, 2011 WL 1230339, *6 (W.D. Pa. 2011) (*quoting* Reilly v. Office of Personnel Management, 571 F.3d 1372, 1382 (Fed. Cir. 2009)), none of those circumstances appear applicable here. Indeed, as the Acting Commissioner argues, "the record does not show, and Plaintiff does not argue, that his condition improved between the time he alleges his disability began and the time of his consultative examination". Acting Commissioner's Brief [16-1], p. 25.

More persuasively, plaintiff argues that ALJ McGuan failed to give good reasons for discounting Dr. Wnuk's opinion. Plaintiff's Memorandum of Law [9-1], pp. 20-22. "[W]hen a treating physician's opinion is not given 'controlling' weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive", Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008), including, *inter alia*, the frequency of examination and the length, nature and extent of the treatment relationship, the evidence in support of the treating physician's opinion, the consistency of the opinion with the record as a whole, and whether the opinion is from a specialist. *See* 20 C.F.R. §§404.1527(c), 416.927(c). [8] After considering these factors, "the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion". Burgess, 537 F.3d at 129.

---

[8] For claims filed on or after March 27, 2017, the rules in 20 C.F.R. §404.1520c now apply.

In explaining why he was only affording "some weight" to Dr. Wnuk's opinion, ALJ McGuan stated that he saw "nothing in the record that would preclude the claimant from sitting more than 4 hours and lifting 10 pounds occasionally". Administrative record [6], p. 27. That conclusory analysis does not satisfy the treating physician rule. *See* Oomen v. Berryhill, 2017 WL 1386355, *11 (S.D.N.Y. 2017) ("[t]he ALJ afforded '[s]ome weight' to Dr. Rudnick's . . . evaluation given his status as a treating source. . . . The ALJ concluded, however, that there was 'no support in the record' for Dr. Rudnick's opinion that Oomen 'needs hourly breaks or is unable to stoop.' . . . Such a conclusory statement does not constitute a 'good reason' for not assigning controlling weight to a treating physician's opinion"); Mercado v. Colvin, 2016 WL 3866587, *16 (S.D.N.Y. 2016) ("ALJ Gonzalez's conclusory assertion that 'scant evidence' supported a four-hour workday restriction . . . does not countenance discrediting this limitation"); Ashley v. Commissioner of Social Security, 2014 WL 7409594, *2 (N.D.N.Y. 2014) (an ALJ's "conclusory statement about the treatment records [not supporting the treating physician's opinion] fails to fulfill the heightened duty of explanation"). The record included MRIs revealing a disc herniation at L5-S1, accompanied by at least one recommendation for surgery. Administrative record [6], pp. 188, 193-95, 200. ALJ McGuan's failure to specifically address these medical findings makes it difficult to follow his reasoning as to why the medical records did not support Dr. Wnuk's opinion. *See* Mercado, 2016 WL 3866587 at *16.

Expanding upon ALJ McGuan's conclusory explanation, the Acting Commissioner argues that "the objective evidence . . . was inconsistent with Dr. Wnuk's restrictive statement", was contrary to plaintiff's statements to Dr. Wnuk in June 2010 that he had "been cutting trees for work", contrary to Dr. Wnuk's instruction to plaintiff that he exercise,

and that the gap (from April 2004 to February 2009) in Wnuk's treatment of plaintiff "reduce[d] the probative value of Dr. Wnuk's opinion". Acting Commissioner's Brief [16-1], pp. 19-20. However, "the ALJ did not articulate . . . these rationales in his decision, and the government's attempts to provide a *post hoc* rationale for the ALJ's determination are not a proper substitute for the ALJ's obligation to provide 'good reasons' for the weight accorded to a treating physician's opinion". Kelly v. Astrue, 2014 WL 3563391, *22 (W.D.N.Y. 2014). *See* Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) ("[a] reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action'"); Demera v. Astrue, 2013 WL 391006, *3 n. 3 (E.D.N.Y.2013) ("[t]he ALJ did not provide these explanations, however, and post hoc rationalizations for the ALJ's decision are not entitled to any weight"); Peralta v. Barnhart, 2005 WL 1527669, *10 (E.D.N.Y.2005) ("the Commissioner's explanation of the ALJ's rationale is not a substitute for the ALJ providing good reasons in his decision for the weight given to treating physician's opinions"); Leroy v. Colvin, 84 F. Supp. 3d 124, 134 (D. Conn. 2015) ("[t]he reviewing Court cannot accept a rationale supplying 'good reasons' if that rationale is fashioned by someone other than the ALJ").

"Once it is established that the treating physician's rule was applied incorrectly, the Secretary's denial of benefits may not be upheld based on the substantial evidence standard." Golden v. Secretary of Health & Human Services, 740 F. Supp. 955, 961 (W.D.N.Y. 1990). *See* Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).[9] Therefore, I recommend that this case be remanded for proper application of the treating physician rule.

---

[9] Plaintiff also argues – and the Acting Commissioner does not dispute - that Dr. Liu failed to review any medical records. Plaintiff's Memorandum of Law [9-1], *citing* [6], p. 214. Although not expressly argued by plaintiff, "where it is unclear whether an agency consultant reviewed 'all of [the plaintiff's] relevant medical information,' the consultant's opinion is not supported by the evidence of record, as required to override the opinion of a treating physician." Bonneau v. Astrue, 2014 WL 31301, *8 (D. Vt. 2014) (*quoting* Tarsia v. Astrue, 418 Fed. App'x 16, 18 (2d Cir. 2011) (Summary Order)).

### 2. Did ALJ McGuan Properly Evaluate Plaintiff's Credibility?

The applicable regulations recognize that a claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone". SSR 96– 7p, 1996 WL 374186, *3. However, when the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the entire record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii). The ALJ must recite "specific reasons for the finding on credibility . . . and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight". SSR 96–7P, 1996 WL 374186, *4. "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if supported by substantial evidence. Aponte v. Secretary, Department of Health & Human Services of the United States, 728 F.2d 588, 591 (2d Cir. 1984). *See* Quintana v. Colvin, 2017 WL 752187, *13 (S.D.N.Y. 2017) ("[t]he ALJ must explain a decision to reject a claimant's testimony with sufficient specificity to enable the reviewing Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's decision is supported by substantial evidence").

ALJ McGuan's credibility analysis merely stated that "the objective findings . . . fail to provide strong support for the claimant's allegations of disabling symptoms and

limitations" [6], p. 23. He then summarized the medical records before concluding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensify, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained. In terms of the claimant's alleged limitations, it is recognized that [he] may experience some degree of pain and discomfort. However, mild to moderate pain or discomfort is not, in itself, incompatible with the performance of sustained work activity. Neither objective medical evidence nor the testimony of the claimant establishes abnormalities, which would preclude him from performing at the [RFC] . . . assessed . . . . So, while the claimant has impairments that are reasonably expected to produce the type of pain or discomfort he alleges, his complaints suggest a greater severity of symptoms than can be shown by the objective evidence alone. . . . The claimant's subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms". Administrative transcript [6], pp. 26-27.

"It is the function of the [ALJ], not [the Court] . . . to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health & Human Services, 705 F.2d 638, 642 (2d Cir. 1983). However, "[a] finding that the witness is not credible must be set forth with sufficient specificity to permit intelligible plenary review of the record". Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). Thus, credibility "findings 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Nix v. Astrue, 2009 WL 3429616, *5 (W.D.N.Y. 2009) (*quoting* Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.1995)); Konidis v. Colvin, 2015 WL 2454004, *7 (W.D.N.Y.), adopted, 2015 WL 2454038 (W.D.N.Y. 2015) (Arcara, J.) ("credibility determinations must contain specific findings based on substantial evidence in order to allow for

review"). "A recitation of the evidence, without more, is insufficient to permit th[e] Court to review the ALJ's credibility determination." Spear v. Astrue, 2014 WL 4924015, *20 (W.D.N.Y. 2014).

Notwithstanding its length, ALJ McGuan's conclusory credibility determination is bereft of any specific explanation as to why plaintiff's subjective complaints are not supported by the record. See Konidis, 2015 WL 2454004, *7 ("the ALJ merely presented the recitation of the medical record without stating the specific inconsistency of that record to plaintiff's stated complaints to justify questioning her credibility"); Spear, 2014 WL 4924015, *20. Although remand is not required where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision", Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983), I am unable to determine from the record whether ALJ McGuan's credibility determination is supported by substantial evidence. See Gorman v. Colvin, 2014 WL 537568, *9 (E.D.N.Y. 2014). Therefore, I recommend that the case also be remanded for a proper credibility analysis.[10]

---

[10] Although plaintiff also seeks remand for ALJ McGuan's alleged failure to perform a function-by-function assessment of plaintiff's RFC (plaintiff's Memorandum of Law [9-1], pp. 24-27), it would be premature to address that issue based on my recommendation that the case be remanded on other grounds. See Spear, 2014 WL 4924015, *20 ("[b]ecause I conclude that the ALJ's credibility assessment was the result of legal error, I am unable to subject the ALJ's physical RFC analysis to meaningful review, and I do not reach Spear's remaining contentions regarding the ALJ's physical RFC assessment"); Bermudez v. Colvin, 2015 WL 1241000, *17 (W.D.N.Y. 2015) ("[b]ecause I conclude that remand is appropriate for clarification of the ALJ's credibility assessment, I am unable to meaningfully review the ALJ's mental RFC analysis, and I do not reach Bermudez's remaining contentions regarding the ALJ's mental RFC assessment or her remaining challenges to the ALJ's credibility determination"); Norman v. Astrue, 912 F.Supp.2d 33, 85 n. 79 (S.D.N.Y.2012) ("[b]ecause I find that remand is proper on the basis of the ALJ's failure to properly develop the record and to properly apply the treating physician rule, I do not reach plaintiff's arguments with respect to . . . the ALJ's determination of RFC at step four").

**CONCLUSION**

For these reasons, I recommend that that plaintiff's motion for judgment on the pleadings [11] be granted to the extent that this case be remanded to the Acting Commissioner for further proceedings consistent with this Report and Recommendation,[11] and that the Acting Commissioner's motion for judgment on the pleadings [14] be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 13, 2017. Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new

---

[11] Although plaintiff initially argued that the case should be remanded for a calculation of benefits from September 30, 2005 to September 7, 2012, the date of Dr. Liu's opinion – the first medical opinion contradicting Dr. Wnuk's opinion (plaintiff's Memorandum of Law [9-1], pp. 27-28), he appears to have abandoned that argument in his Reply [19], where he makes no request for a calculation of benefits. Id., p. 10. In any event, that argument lacks merit for the reasons discussed above.

arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: October 30, 2017

                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge